19-2946 from the District of North Dakota, United States v. Jack Chappell. All right, Mr. Sandberg, we'll hear from you first. Thank you, Your Honor. Good afternoon, Your Honors. As you can see from the briefing, there's really three things that Mr. Chappell is seeking today. Two of them are closely related, and then the other one is kind of at the end of the appeal regarding the judge's rejection of our variance on the guidelines at the end of sentencing. But the first two issues are basically intertwined, and it's basically the same set of facts with two different requests. The first request we made of the district court was for a new trial based on newly found evidence, and the second request we made of the court was for a new trial based on a Brady violation by the government. Both of those first two issues, the new trial and the Brady violation allegation, stem from a witness that appeared at trial at Mr. Chappell's case. That witness was a woman by the name of Leslie Ball. Ms. Ball testified, but before she testified, my client had caught wind through whatever resources he had that Ms. Ball might be still using narcotics. As the court can see from the record, I asked the district court to drug test her just on a thought of precaution before she took the stand, and the judge declined to do so since Ms. Ball was not there as a defendant. Ms. Ball then took the stand and testified. Ms. Ball was not just any other witness. She was not just a mere additional witness. Ms. Ball was the key witness, the final witness that the government produced, and she was the witness who connected my client, the defendant, to all of the accusations and allegations of the drug trafficking that was going on in Bismarck, North Dakota, relevant to his case. She is the one who knew my defendant first. She's allegedly the one who brought my defendant to North Dakota. She is allegedly the one that put my client in contact and testified all about those contacts with different people. Accordingly, she was a fairly serious, significant, and critical witness. Counsel, is there anything that she said that other witnesses did not say? I understand that she may have connected all the dots, but I'm wondering if there's any specific testimony that only she gave. Only in as much as she was able to give character and background to Mr. Chappelle that the other were not able to. Once Mr. Chappelle lands in Bismarck, her testimony is, by and large, very similar to what everyone else said. What does that do to your claim, then, both new trial and Brady? Because both of them are, well, at least the new trial requires it not to be cumulative or impeaching, and Brady requires materiality. So does that undermine your argument? Well, it certainly could, and we're certainly cognizant of the fact that it could. And in fact, the district court sure felt that it undermined my argument, because that appears to be, not in small part, the basis of the court's decision. And in fact, the district court said that, well, there's lots of other witnesses, so even if Ms. Ball's testimony was thoroughly impeached and the jury didn't believe her, the court felt there was other evidence. So certainly, we are not so ignorant as to believe that Ms. Ball's testimony was profoundly unique to everyone else. However, that's why I go back to this idea that I think she did a lot more than connect the dots. A lot of the other witnesses had, I call it, dribs and drabs of Mr. Chappelle. They're basically dealing with a lot of drugs before, during, and after Mr. Chappelle's arrival. Ms. Ball certainly was far more significant and thorough in testifying about Mr. Chappelle being involved in narcotics and why he became involved and with whom he became involved, as opposed to the other witnesses who may have just seen him merely present in a lot of situations. So because of that, her testimony becomes a little bit more significant. In fact, I believe it becomes a lot more significant. Her testimony is also a lot more significant. I'm sorry, Judge. Mr. Sandberg, this is Judge Gross. I had a question, and please correct me if I'm wrong, but as I see the record, the material that has been attributed to Ball on page 26 of your brief for the proposition that she lied actually came from Pfeiffer's testimony. Where does the record show that Ball lied? Thank you, Your Honor. I will show you. It's at, I believe, we are at addendum to the appellate brief, starts at page 17, line 21, and this is the discussion to Ms. Ball with regard to her drug use, in which I actually asked her, okay, now you said you had been using meth for a long time, over 10 years. Is that your testimony? Yes, sir. My next question, all right, are you still using meth? No, sir. When did you stop? June of 2016. Okay. That's despite the recent charge for possession of meth, there was no use there. Oh, okay, just possession. Yep. Well, now, Mr. Sandberg, if I understood it, though, you had information at that time about an overdose two or three days earlier, is that correct? We had information that allegedly had floated into my client in a jail about 150 miles away that had heard that she had been involved in an overdose. I don't know that I would call that. That was the basis on which you asked for a drug test. That's correct, Judge. Well, you could have asked her about it then, couldn't you? Well, I could have, except that I did ask her. She hadn't used since June of 2016. I suppose that would naturally include everything up to and including the time she has testified. And she said she stopped using in June of 2016. In fact, I even pointed out, despite the recent charge of possession, she goes, well, there was no use there, it was just possession. So she is on the record saying that she hasn't used meth since 2016. Okay. Subsequently, after the trial, Ms. Ball actually gets in touch with first my client and then gets in touch with me and begins telling that, in fact, on the day of trial, the night before, she had smoked methamphetamine and was still high, that she had drank all day and was intoxicated with alcohol on the day she testified. But more problematic is the fact that the government asked her those questions before she took the stand. The government asked her, if we gave you a drug test, would you pass? She said no. Regardless of knowing that information and knowing that there was at least some interest by the defense to know that information, the government didn't pass any of that on. And in fact, when Ms. Ball says she hadn't used since 2016, the government now knows she's committed perjury in a trial because she's told them she failed the drug test and she's high. So the government knew when Ms. Ball took the stand that she was intoxicated. Government did not tell the judge that, didn't tell the defense that, and allowed her testimony to go forward. And in fact, allowed her testimony to go forward such to the point that she lied to the court and at no point in time did the government stop the proceedings, approach the bench, or cross-examine or redirect, rather, Ms. Ball to clarify what had said just about 20 minutes previous to taking the stand. And so what we have is an individual under the new evidence issue that was obviously intoxicated on both alcohol and narcotics and lied about it. And then we have on the Brady issue, the information that the government has in their hand, evidence of the fact that at a bare minimum, one of their key witnesses just lied on the stand about what time did you get up this morning or what did I have for breakfast. She lied on the stand about a pretty serious matter. This is a methamphetamine distribution ring that she's testifying about. And in that testimony, she's saying I haven't touched meth since 2016. Now, it doesn't really come out much unless you read the transcript, but part of the was to inquire about the agreement that she had with the government as to allowing her to testify. In fact, she was never charged in this case. Now, when she comes up and says I haven't used narcotics since 2016, that again buttresses her support in front of the jury under the idea that she's been sober since 2016. The jury can then infer that she hasn't had anything to do with narcotics or bad living since 2016, which of course supports the fact of why she wasn't criminally. Again, it may blend into the idea that that sounds a lot like impeachment, and it is impeachment, but for this particular witness and this particular type of evidence, I believe it goes beyond that and significantly cuts toward the credibility of that witness. I've also argued to a certain degree that it cuts toward the credibility of the government's case when the government has information that they know or that they know that they are placing somebody who is intoxicated and on drugs, admittedly, before the court. We asked the court after we got that information, well, I should back up. Before we got that information, or after I got the information, I passed it on to the government, and I told the government that Ms. Ball was going to talk to me again. I told the government everything Ms. Ball said. I wanted to know if the government wanted to be involved in it at all, and then I talked to Ms. Ball again with the idea that Ms. Ball would prepare an affidavit, and then Ms. Ball disappeared, and we didn't have her. We had her phone records. We had her phone calls to the jail in which she basically said in the phone, in fact, said in the phone that the government had told her and that she had lied about it on the stand, or the government had told her if she could take a drug test, she lied about her sobriety on the stand, and then we had at least the affidavit that I put together, which was cobbled from her phone conversation, well cobbled, I would say, but it didn't have her signature on the bottom, and from my understanding, nobody's heard from Ms. Ball since. That information was then put in front of the court, and we asked the court to review it for a new trial, as I indicated, for the new evidence and for the Brady violation. The court's order makes several comments about, and somewhat in keeping with the court's comments here today, that those issues could have been brought up on cross-examination, and the court opines that they weren't, but I've just read into the record what I believe was the question, which is, have you been on drugs? No. When did you stop? Since 2016. So we did inquire as to sobriety, both long-term and short-term in that question, and she lied. Didn't you have a good faith basis to impeach her with your knowledge of the recent overdose, and if you had asked that, you might have achieved the same thing you're trying to achieve now? Well, it's a possibility. My concern was this. First of all, I'm not necessarily comfortable with jail rumors. I was comfortable enough to want a drug test. I was comfortable enough to know what's going on with Ms. Ball, but when the prosecutor puts her on the stand, I trust that the prosecutor would not put intentionally a person who had just told them they wouldn't pass drug tests, had just done meth, and had been drinking all day on the stand. So the jail rumor was enough to get my antenna up. I don't know that the jail rumor was enough or even satisfactorily enough to put out there. I had it not confirmed by anybody. The only person I had it confirmed on was my client. My client was not, you know, he just said he heard from people in the jail, and so I guess I didn't see that as evidence even worthy of the cross-examination question when she already said that she didn't do drugs since 2016. So she lied on the stand, and I presume what the government's position is and what the judge's position was, well, you should have explored further. You should have done more. Well, you know, she lied, and how am I to know that she didn't lie at that point in time when the government has put her forward? That's kind of almost the core crux of the whole Brady issue that I bring before you, because had I had other evidence, the cross-examination could have gone quite differently, but the only evidence I have is a jail rumor that she overdosed, but I didn't know anything more than that. She said she's been sober since 16. One minute remaining. Nevertheless, the court then anyway denied the motion for a new trial on the new evidence, basically feeling that it was probably cumulative or impeaching evidence and that it did not involve issues of material issues. One minute remaining. You're down to your final minute. Would you like to reserve for rebuttal? I can reserve for rebuttal. Thank you very much, Judge. All right. Ms. Healy, we'll hear from you. Thank you. Can your honors hear me? Yes. Yes. Thank you. Good afternoon. May it please the court and Mr. Sandberg. My name is Megan Healy, and I represent the United States in this matter. At the outset, we need to deal with two factual allegations that have been made in the defendant's brief and again on oral argument today related to the new trial and Brady arguments. These two factual allegations are not premised on anything in the record and are unsupported by the record. The first is made on page 14 of the defendant's brief and again in oral argument today where the defendant alleges the United States knew Ball was intoxicated when she testified and withheld that information. There is no support in the record support for the claim that the United States had knowledge that Ms. Ball was actually intoxicated when she testified. For this point, the appellant cites to the addendum at pages 13 and 14, the defendant's addendum, but those record sites go to the district court's order where the district court rejected this proposition that any claim of intoxication was unsubstantiated by the record. Second, and Judge Gross touched on this point, on page 18 of the appellant's brief and on page 26. On page 18, this quote from the record that Mr. Sandberg has discussed a few times representing that Ms. Ball lied on the stand, it's laid out on page 18 of the brief and again referenced on page 26 of the brief. This exchange between parties is not with Leslie Ball regarding meth use in 2016. This exchange is with Justin Pfeiffer. It is referenced to page 17 and 18 in the addendum which comes from the bottom of page 594 and the top of page 595 in the trial transcript during the cross-examination of Justin Pfeiffer. If you look at Ms. Ball's testimony which starts on page 612 of the trial transcript, the district court was correct in its assessment that neither party asked Ms. Ball about any recent drug or alcohol use during direct or cross-examination and in fact, it came out during that examination that Ms. Ball had been using meth throughout the time of the events in question and that she had an alcohol problem. She talked about how in 2017 she went to treatment for alcoholism and she also admitted on cross-examination that she had done meth since that time and that she started drinking again in 2018. This is page 645 to 648 of the trial transcript is where the court will find these questions during cross-examination. So, setting aside these two factual issues which are really the crux of the defense's case on the allegation of the United States knew that Ball was actually intoxicated. There's no support in the record for that claim and that Ball was asked on cross-examination and the United States did not correct the record and hampered the cross-examination. That entire argument is premised on the testimony of a different individual, not on Ms. Ball's does not concede any element of the of the new trial inquiries, newly discovered evidence, a diligence, but I'm going to turn to the fact that this is impeachment information. The impeachment information is merely cumulative of what already came out at trial as I just summarized for the court regarding her use. It was established that she used meth during the time frame, that she went to treatment, that she admitted using meth again and that she'd drinking again. If she had been using during the time period of the trial that simply adds on to the characterizations that were already established of her at trial, which is very similar to the Meeks case where the witness was portrayed as a drug user and a former dealer and he was impeached as such. So, the additional information that he was also selling drugs during the time of his testimony was not sufficient to show there was an acquittal was likely. And in this case, it is particularly key that the defense at trial didn't deem this material enough. Now, the defense counsel has said that his knowledge was really just jailhouse rumors, but the defense at trial told the district court, I know from my information that she's still using pretty significant narcotics and she overdosed a few days ago. And he's indicated this knowledge to convince the court to order a drug test. He didn't tell the court that this is just jailhouse rumors, but it suggested that he had knowledge of this. Despite that, there are no questions asked on cross-examination at all. And that it was not deemed sufficiently important enough and material enough to ask those questions despite having the knowledge in his possession also shows that it was not material in the new trial context. Separately, as to the acquittal, the overwhelming evidence supported Chappelle's conviction, completely setting aside Leslie Ball's testimony. Leslie Ball was an individual who, again, connected some dots, explained some background information, explained how Chappelle got to Bismarck. But after that point, everything related to the actual drug distribution and the actual conspiracy was covered by multiple other witnesses, sometimes in duplicate and triplicate, and backed up by documentary evidence. This is outlined in detail on pages 24 to 26 of our brief. I'll just highlight a few of them, that Leslie Ball said she introduced the defendant to Mr. Hollingshead. Yes, David Hollingshead and Alexander Capone said the same thing. She testified about how the defendant stayed at various hotels. Multiple witnesses, Hollingshead, Nelson, Pfeiffer, all testified to the same thing, backed up by documentary evidence, which we've included in our appendix on appeal. Leslie Ball said she picked up David Hollingshead after his apartment was robbed, and he said the same. She said that she deposited money from David Hollingshead into Chappelle's Wells Fargo account. David Hollingshead said the exact same thing. And there were bank records also reflecting a transaction in the amount Hollingshead testified to. She talked about an event at Justin Pfeiffer's shop, where Justin Pfeiffer took a lot of methamphetamine out of the car. Ms. Ball said she was in the office and didn't really see what they're doing, but she understood what was going on. But Justin Pfeiffer did tell the jury exactly what was going on. David Hollingshead said the exact same thing, that he had heard both from the defendant and from Pfeiffer what had happened regarding removing large quantities of meth from the defendant's Mercedes engine. And David Nelson said the same thing. Leslie Ball talked about how she went to Hollingshead's house in January 2016 to collect money for the defendant. There was a text message saying the exact same thing, that from Chappelle to David Hollingshead, saying he had sent Leslie over there, and why wouldn't he answer the door? It's also included in our appendix on appeal. And it's admitted that Leslie Ball was not involved in the distribution aspect of this methamphetamine conspiracy ring. Taking this all together, the district court was absolutely correct, that there was overwhelming evidence supporting the conspiracy conviction completely setting aside Leslie Ball's testimony. And as the judge said, it was highly unlikely that there would be an acquittal on this case. Indeed, from the court's perspective, even if Ms. Ball had never testified at trial, the evidence of guilt was overwhelming. There's one more thing to point out with respect to the acquittal issue, and that in the appellant's brief on appeal on page 14, in the context of saying that her testimony was so unreliable, it should have been thrown out under 403. But then on page 21, saying she was the only credible witness, she was the only one who was believed, she was the only one who knew him. That dichotomy just doesn't square up. As to her competency to testify and the evidence of intoxication, the district judge had been alerted to this fact, that the defense knew she had overdosed and knew she was using significant amounts of drugs. And the district court paid close attention. He indicated in his new trial order he did not detect any impairment. And he noted that the court actually questioned her at the end of her testimony, looking for any indication of what he had been alerted to. And based on a careful review, her answers were thoughtful and complete. There's no indication she was under the influence of drugs or alcohol. For many of these same reasons, there is no Brady violation here. To show Brady violation, you need to show suppression of favorable information that is material to the outcome. And here there is simply no suppression. First, the new trial or the new evidence that's brought forward is an unsubstantiated allegation that Leslie Ball was under the influence. Her demeanor, as I just said, did not reflect that. There's nothing in the record to reflect that she was. And there's no affidavits to that effect. Defense counsel prepared one for her. And when she got it and read it, you can hear on the jail call, her tone changed and she June 12th jail call when she was talking about it. And she did not sign it. She ran away from it and disappeared. And there's, of course, no obligation to turn over information that the defense already has in his possession. This is the unusual case where the defense actually alerted the United States to Leslie Ball's recent drug and alcohol use. As the district court found, the defense was aware of this issue and brought it to the court's attention. And the record shows, just as the district court found, that the record contains no evidence of a Brady or a Giglio violation. And the materiality discussion that I covered in the new trial, although the inquiries are not exact, the factors also carry over to the materiality inquiry for the Brady purposes in this case. Suffice to say, the issues on appeal were based on factual allegations that are not supported in the record. The district court did a very careful analysis showing that there was no basis for a new trial in this case. And the United States respectfully requests that this court affirm the judgment of the district court. If the court has no further questions of me, I will yield the rest of my time. Thank you very much. Very well. Thank you for your argument. Mr. Sandberg, we'll give you one minute for rebuttal. Thank you, Your Honor. I guess I will just take my attention directly to the Brady issue. In that particular issue, one wonders why the government didn't share that information. And it's our argument that they should have shared that information and did not. And they didn't share that information because it may have been negative toward their witness and negative toward their case. That in and of itself shows what I would consider bad faith under the Brady rule. And that that evidence and testimony should have been provided to the court and to myself. Merely because she was able to sit both upright in the witness stand and not appear to be stoned isn't in and of itself forgiveness for what could be, in our allegation, a Brady violation. So with that, Your Honor, I would ask you to consider our brief recording. Thank you. Well, before you close, could you address this problem that your brief on page 18 has a dialogue that you say is between Sandberg and Ball when the record shows it's between Sandberg and Pfeiffer? That appears to be, without a whole lot more, that appears to be a error in the production of the brief. And that appears to be Mr. Pfeiffer. That is correct. Okay. Well, thank you both for your arguments. The case is submitted and the court will file an opinion in due course.